UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SABA MOHAMED ALDERRAH,

        Plaintiff,

v.

                                                    Case No. 07-10371

MICHAEL CHERTOFF, EMILIO GONZALES, JR.,    Honorable Julian Abele Cook, Jr.
CAROL JENIFER, UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,

        Defendants.

## ORDER

On January 23, 2007, the Plaintiff, Saba Mohamed Alderrah,[1] filed a complaint with this Court, in which he accuses the Defendants, Michael Chertoff, et al, of having collectively delayed his request for naturalization without justification. On March 22, 2007, the Defendants filed a motion, seeking the dismissal of the complaint, or in the alternative, to obtain a remand of this case to the United States Citizenship and Immigration Services (USCIS) for further action. On July 11, 2007, Alderrah was given a period of sixty days thereafter in which to retain a substitute counsel who would represent his interests in this litigation.[2]

---

[1] This lawsuit, when it was originally filed, included the name of Snehasis Ganguly as a Plaintiff. On October 29, 2007, an order of voluntary dismissal was entered at the request of Ganguly, who informed the Court that his naturalization application had been completed by the USCIS which, in turn, obviated the need for any further judicial action.

[2] The Court, in noting that Alderrah's original counsel, Brian Casterline, had reportedly left his law firm without providing any forwarding address or contact information for his client in this litigation, removed him as the attorney of record in this case. The Court undertook this action after Casterline failed, refused or neglected to respond to an order of June 4, 2007 which

The Court, after noting on October 29, 2007 that (1) more than ninety days had elapsed since the entry of the July 11th order, and (2) Alderrah had neither retained another attorney to represent his interests in this case nor responded to the Defendants' dispositive motion, directed him to respond to the Defendants' dispositive motion on or before November 30, 2007. However, the record in this cause indicates that Alderrah has not submitted a response to the Government's motion as of this date.

I.

In his complaint, Alderrah, a citizen of Iraq who was admitted to the United States as a permanent resident, has asked the Court to assume jurisdiction over his application for naturalization and, thereafter, to render a decision that will naturalize him as a citizen pursuant to 8 U.S.C. § 1447(b) by issuing a Certificate of Naturalization or its equivalent. Alderrah, in complaining that more than 120 days has elapsed since the completion of his initial examination for naturalization on August 25, 2004, submits that he was advised by an unidentified representative of the USCIS that (1) all of the requirements for naturalization had been satisfied by him, and (2) an additional background check by the Federal Bureau of Investigation (FBI) would be necessary in order to complete the application.

In their answer, each of the Defendants note that, in the aftermath of the tragic events of September 11, 2001, the former Immigration and Naturalization Service was reconstituted into three separate bureaus within the Department of Homeland Security (DHS).[3] In the course of its

---

had directed him to set forth his reasons, if any, why he should not be removed from the case as Alderrah's lawyer.

[3]These agencies are (1) the United States Citizenship and Immigration Services (USCIS), (2) the United States Immigration and Customs Enforcement (ICE), and the United States Customs and Border Protection (CBP).

reorganization, the DHS established policies and procedures for "verifying that persons receiving a benefit under the Immigration and Nationality Act (INA) were not involved in activities adverse to the United States" which would make them ineligible for receiving an immigration benefit. These policies and procedures required the agency to conduct background and security checks prior to the tender of any immigration benefit, such as naturalization of citizenship. The background checks would include such things as reviews of computer database records by the DHS and a "full criminal and administrative background check" by the FBI, including "a criminal records check (fingerprint check) and an administrative check under the FBI's National Name Check Program." It is the Defendants' contention that the National Name Check Program, which is responsible for disseminating information from the Central Records System of the FBI, has experienced an "extraordinary growth in the number of requests from customers seeking background information from FBI files on individuals before bestowing a privilege." According to the Defendants, the FBI generally processes regular name check requests by the USCIS on a "first-in, first-out" basis. They claim that the USCIS submitted Alderrah's name to the FBI in 2004 (March 3rd and April 3rd) and on February 15, 2005, a process which remains incomplete as of this date.

II.

The Defendants have moved for the dismissal of this case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[4] As an alternative remedy, they have asked the Court to remand this case so that the USCIS can complete its investigation of the Plaintiff's qualifications for naturalization and render a decision on his application. Their principal argument is that those conditions (i.e., the completion of a full naturalization examination under § 1446(b)),

---

[4]Fed. R. Civ P. 12(b)(1) states, in part, that "(e)very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . (1) lack of subject-matter jurisdiction."

which establish jurisdiction under 8 U.S.C. § 1447(b), have not been satisfied. The Defendants maintain that their position is "supported by the plain and unambiguous language of 8 U.S.C. §§ 1446 and 1447, the purposes of those sections and their implementing regulations, and by sound public policy considerations." They also assert that the USCIS is entitled to deference in its interpretation of "examination," as found in §§ 1446 and 1447, citing *Chevron v. NRDC*, 467 U.S. 837 (1984) and its progeny. Finally, the Defendants submit that 8 U.S.C. § 1447(b) does not allow for any order which is designed to compel the FBI to complete a name check within a designated period of time. This statute reads as follows:

> If there is a failure to make a determination under section 335 [8 USCS § 1446] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

The official record in this cause indicates that Alderrah appeared for his initial interview with the USCIS on August 25, 2004. Notwithstanding, it is the contention of the Defendants that this interview was not the "examination" which is required under § 1443(a) and its implementing regulations. They also submit that the requirements of an "examination" are further specified in the USCIS regulations which implement § 1446(b) and require a review "of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed." 8 C.F.R. § 335.1. Therefore, it is the Defendants' viewpoint that the 120 day period, which is identified in this section, does not begin to run until the FBI has completed its background investigation.

The Defendants suggest that the "case law interpreting the term 'examination' in § 1447(b) has been mixed, but most recently appears to weigh against construing a naturalization interview as an applicant's full examination." As evidence of this assertion, they cite *Danilov v. Aguirre,* 370

F. Supp. 2d 441 (E.D. Va. 2005), which holds that "an examination is . . . is essentially a process the agency follows to gather information concerning the applicant." However, this assertion must be evaluated with great scrutiny, inasmuch as the *Danilov* decision has been criticized by approximately sixty-nine courts and followed by only fourteen. Thus, a majority of the courts, including those in the Eastern District of Michigan, "have concluded that the term "examination" in Section 1447(b) refers to the agency's initial interview of the applicant." *Dukhow v. USCIS,* No. 07-14549, 2008 U.S. Dis. LEXIS 11414 (E.D. Mich. Feb. 15, 2008).

In *Alkabi v. USCIS*, No. 07-13540, 2007 U.S. Dist. LEXIS 92593 (E.D. Mich. Dec. 18, 2007), the court succinctly rejected the Defendants' interpretation of the term "examination" in § 1447(b):

> First, Section 1447(b) confers jurisdiction on the district court if the agency fails to make a determination "before the end of the 120-day period after the date on which the examination is conducted." 8 U.S.C. § 1447(b). This language implies "that the examination occurs on a particular, identifiable, date." *El-Daour v. Chertoff,* 417 F. Supp. 2d 679, 681. Therefore, the "examination" referred to in the statute is not a "process," as [the USCIS] argues, because a "'process' does not occur on one particular identifiable date." *Id*. Second, the preceding section of the INA, 8 U.S.C. § 1446, indicates that the investigative process is separate from the examination. *Daami* v. *Gonzales*, No. 05-3667, 2006 U.S. Dist. LEXIS 37539, 2006 WL 1457862, at *5 (D.N.J. May 22, 2006) (unpublished opinion). Third, [the USCIS'] regulations contemplate a distinction between the examination and the investigation and reflect the agency's interpretation that the 120-day period in Section 1447(b) begins to run from the date of the initial examination. *Khelifa v. Chertoff,* 433 F. Supp. 2d 836, 841 (D. Mich. 2006). For example, 8 C.F.R. § 335.3(a) states in part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." And, contrary to the *Danilov* court's reading, 8 C.F.R. § 335.2(b) requires [the USCIS] to conduct the initial examination only after the FBI completes its criminal background check of the applicant. "By referring separately to the FBI background check and the 'initial examination,' and mandating that the former must be completed before the latter will be conducted, this provision plainly contemplates that the background check is independent from, as to a part of, the "examination" . . .". *Khelifa*, 433 F. Supp. 2d at 841. In one recent case, *Al-Ghanem* v. *Gonzales*, No. 06-320, 2007 U.S. Dist. LEXIS 8900, 2007 WL 446047, slip op. at *10 n. 13 (D. Utah Feb. 7, 2007), [the USCIS] acknowledged that 8 C.F.R. § 335.2(b) requires [this agency] to conduct the initial examination

only after the FBI completes its criminal background check of the applicant.

This Court is not convinced by the Defendants' arguments that claim that the "examination" in § 1447(b) is not completed, and the 120-day period is not triggered, until the FBI completes its background check.[5] For the reasons that have been stated above, the Court concludes that Alderrah's initial interview triggered the 120-day period, as identified in § 1447(b). Here, the record is clear that he filed his complaint on January 23, 2007, well over 120 days after the initial hearing on August 25, 2004. Thus, the Court concludes that it does have subject matter jurisdiction over this case.

### III.

Turning to the Defendants' alternative argument (i.e., remand to the agency so that "it may complete its examination of [the Plaintiff's] qualifications for naturalization and render a decision on [his application])," they note that the vast majority of those courts which assumed subject matter jurisdiction over allegedly incomplete naturalization applications have "nevertheless remanded the cases to [the]USCIS for a decision after the background check information became available and any necessary follow-up was complete . . . ." *See, e.g., Khelifa v. Chertoff,* 433 F. Supp. 2d 836 (E.D. Mich. 2006). In 2002, the Supreme Court opined that "[g]enerally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12 (2002). In a similar case to the one before this Court, a

---

[5]The Defendants have also urged the Court to give deference to their interpretation of an "examination," citing *Chevron,* supra, which requires the courts to "defer to an agency's reasonable interpretation of a statute it administers unless 'the intent of Congress is clear.'" *Hamama v. INS*, 78 F.3d 233, 239 (6th Cir. 1996). Contrary to the Defendants' opinion, the Court concludes that an "examination," as used in § 1447(b), clearly refers to an applicant interview by the agency. Thus, in the view of the Court, the interpretation of this term by the USCIS is not justified. As such, the Defendants' interpretation is not entitled to a *Chevron* deference.

district court found that:

> [T]he executive branch is generally given great deference in immigration matters. More specifically, a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security." *El-Daour v. Chertoff*, 417 F. Supp. 2d 679, 684 (D. Pa. 2005).

Inasmuch as his initial examination for naturalization occurred over three years ago, the Court remands this case to the USCIS which is directed to render a decision on Alderrah's application for citizenship within a period of 120 days from the date of this order.

IT IS SO ORDERED.

Dated: March 31, 2008         s/ Julian Abele Cook, Jr.
       Detroit, Michigan      JULIAN ABELE COOK, JR.
                              United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2008.

                              s/ Kay Alford
                              Case Manager